## WILLIAM WHITWORTH *vs.* ALFRED S. LOWELL.

Worcester.    December 5, 1900. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

Objections to a master's report not perfected as exceptions in accordance with Chancery Rule 32 of the Superior Court are not open for consideration.

Chancery Rule 32 of the Superior Court provides that exceptions to the report of a master shall be filed with the clerk and notice thereof given to the adverse party, and that in every case the exceptions shall briefly and clearly specify the matter excepted to, and the cause thereof.    This rule is not complied with by filing objections to a master's report and to findings of the master and requests for findings and rulings, and then alleging that the objecting party excepts to so much of the master's report as is inconsistent with his objections and his requests for findings and rulings which are appended to the master's report.

In a suit in equity to reform a contract to furnish steam piping for a building of five floors, it appeared that the plaintiff was invited to bid for the contract and to "Make price on piping without tanks and elevator pumps and with" and to

"Make price on complete plant" and to "Make price on plant without heating system above the second floor." The plaintiff made a bid as follows: "For the whole building, $3,719; for the building below the three top floors, $2,854; and without the tanks and pump, $2,260." The defendant then drew a form of offer, which the plaintiff signed, and also the defendant, as follows: "I propose to install in your new building a complete system of piping in accordance with the plans and specifications. The price for the above is $2,260. I further agree to install all work above the second floor for the sum of $965, this sum being deducted from the total cost for the whole building, if not done." The plaintiff sought to have this contract declared ambiguous, and to have it reformed in accordance with his construction of his original bid. *Held*, that the original bid was ambiguous and the contract as signed was not, but meant that the plaintiff would do the piping of the entire building for $2,260, and would do it without the three upper floors for $965 less, making the price for the piping of the two lower floors $1,295.

BILL IN EQUITY to reform a contract for steam piping a building of the defendant in Worcester, filed August 15, 1898.

The bill alleged, that previous to January 28, 1898, the defendant furnished the plaintiff with certain specifications, a copy whereof was annexed marked "A," for steam piping in a building at the corner of Foster and Norwich Streets in Worcester, which the defendant was then erecting, and requested the plaintiff to make prices therefor according to certain specifications; and thereafter, on January 28, the plaintiff submitted to the defendant a written statement, a copy of which was annexed marked "B," wherein he gave prices for said steam piping as follows: "For the whole building, $3,719; for the building below the three top floors, $2,854; and without the tanks and No. 8 Worthington pump, $2,260"; that the defendant decided to put in at that time the piping below the three top floors without the tanks and the Worthington pump, and to leave the installation of the work on the three top floors open for future consideration, and on February 8, 1898, the defendant himself or through his agents, drew up a proposition or agreement in writing, a copy whereof was annexed, marked "C," for the plaintiff to sign, which proposition or agreement the plaintiff and defendant both signed.

The specifications marked "A" contained the following: "Steam piping for A. S. Lowell, Worcester, Mass. The piping as shown on plan is as follows: [Here followed specifications of the piping required.] Make price on piping without tanks and elevator pump and with. [Here followed specifications for

tanks and elevator pump.] Make price on complete plant. Make price on plant without heating system above the second floor."

The plaintiff's bid of January 28, 1898, marked " B," was as follows:

" Piping for the A. S. Lowell Block, Worcester, Mass. We, the undersigned Whitworth Heating Co., agree to put in the piping, valves, pumps and all connections as shown on plans. [Here followed an enumeration of the piping and appliances to be furnished.]

" Without the three top floors, $2,854.00.

" Without the tanks and No. 8 Worthington pump $2,260.00. The above price include the whole system with the exception of the automatic valve for pressure tank which I have not been able to find."

The document marked " C," which was signed by the parties and became the contract, was as follows:

" Worcester, Mass., Feb. 8, 1898. Mr. A. S. Lowell, Worcester, Mass. Dear Sir: We propose to install in your new building, corner of Foster and Norwich Streets, a complete system of piping for power and heating purposes, in strict accordance with plans and specifications furnished by Lewis & Claflin, and further agree to forfeit the sum of $10 per day for each day after March 10, 1898, that the work necessary for the occupancy of the building is delayed, provided circumstances beyond our control do not interfere.

" The price for the above is twenty-two hundred and sixty dollars ($2,260.00).

" We further agree to install all work above second floor any time previous to September 1, 1899, for the sum of nine hundred and sixty-five dollars ($965.00), this sum being deducted from the total cost for the whole building, if not done.

" It is hereby understood and agreed that this last proposition is to be subject to any changes in the price of stock which may occur between the present date and September 1st, 1899. Respectfully submitted, Whitworth Heating Co., Wm. Whitworth, Treas.                    A. S. Lowell."

The bill further alleged, that in the first clause of said proposition or agreement either by accident, mistake, or by fraud on

the part of the defendant or his agents, the work and materials to be performed and furnished by the plaintiff were not limited and confined to the building below the three top floors as was intended by the plaintiff as the defendant or his agents then well knew, and as appears also in the third clause of said proposition or agreement; that the plaintiff performed the work and furnished the material for piping for power and heating purposes in said building except in the three top floors in accordance with the specifications and his agreement, and the defendant paid him on account thereof the sum of $1,000, leaving the sum of $1,260 still due the plaintiff thereon, but that the defendant now contends that the $965 for future work should be deducted from the $2,260 instead of from the $3,719, the price for the whole building, and that he only owes the plaintiff thereon the sum of $295.

The plaintiff prayed that the first clause of said agreement might be reformed by inserting after the word " purposes " in the third line thereof the following words " below the three top floors," or in some other way to make it conform to the intention of the parties thereto at the time it was executed, and prayed for an enforcement of the contract as reformed.

In the Superior Court the case was referred to a master who reported as follows:

" First. In the month of January, 1898, the plaintiff and the defendant had a conversation in relation to the plaintiff's installing a heating plant in a building then being erected by the defendant in the City of Worcester. After some discussion of the subject, the defendant referred the plaintiff to his engineers, Lewis & Claflin, of Providence, Rhode Island, under whose supervision the building was being erected. Subsequently, W. B. Lewis, of the firm of Lewis & Claflin, sent or gave to the plaintiff a paper containing the specifications in regard to heating the defendant's building, of which a copy was annexed to plaintiff's bill, marked ' A.'

" Second. On or about January 28, 1898, the plaintiff gave or sent to said Lewis, an unsigned proposal or agreement, concerning the said heating, a copy of which was annexed to the plaintiff's bill and marked ' B.' Between the time of the first conference between the plaintiff and defendant, and February 8,

1898, the plaintiff and Lewis had several conversations relating to installing the heating plant, but no definite agreement or understanding in relation thereto, was reached before February 8, 1898. A few days before February 8, 1898, the plaintiff was informed by one Parker, acting for Lewis, that he, Lewis, had decided to give him the job on the bid, and to go to work on it, and that he would be up in a few days and fix up the contract. The plaintiff thereupon began and worked three or four days on the job, before February 8, 1898.

"Third. On February 8, 1898, Lewis drew up in writing, an agreement for the plaintiff and defendant to sign, a copy of which agreement is annexed to plaintiff's bill, marked 'C,' excepting the following words, — 'providing circumstances beyond our control do not interfere.' Lewis gave this agreement to the plaintiff to read and consider. The plaintiff, after reading the agreement, expressed a desire to have incorporated into it the provision, — 'Providing circumstances beyond our control do not interfere.' Lewis assented to this, and the plaintiff thereupon took the agreement to a typewriter, and after the insertion of the above provision, had the same set in type.

"The plaintiff then signed the agreement marked 'C' and took it to the defendant, who also, after reading it, signed it. I find that the defendant never saw the specifications 'A' nor the unsigned agreement 'B' until this hearing, and that the only paper or agreement he had any knowledge of, was the contract 'C' signed by him.

"Fourth. I find that the plaintiff had opportunity to fully consider and understand the terms of said agreement 'C.' I do not find that said Lewis practised any deception or fraud in obtaining the plaintiff's signature to said agreement.

"Fifth. I find that after the plaintiff had put in some portion of the heating plant, and long before the work was completed, the plaintiff was suspicious that the agreement was not what he thought it was, at the time of signing it, and a doubt arose in his mind as to whether the sum of $965 was to be deducted from $2,260, or added to that sum in case the three top floors were furnished with heating appliances. The plaintiff did not inform the defendant, or Lewis, of his doubt or suspicion, but continued on in the work of installing the plant, assuming that the contract

meant that the $965 was not to be deducted from the $2,260, but to be added thereto in case the three top floors were furnished with heating appliances.

" Sixth. The plaintiff after the signing of said agreement, proceeded with the work contemplated, and furnished material and work for heating purposes in said building, except in the three top floors, substantially in accordance with the specifications and agreement.

" Seventh. After the completion of the heating plant, the plaintiff called upon the defendant for a settlement of the account, stating that he understood that he was to receive $2,260 for installing the plant on the two lower floors. The defendant denied this construction of the contract, and contended that the contract was for.$2,260, less $965, for the three top floors, which had not been furnished with heating apparatus.

" Eighth. I find that the plaintiff supposed, at the time he signed contract ' C,' that he was to receive $2,260 for installing the heating plant on the two lower floors, and that he was mistaken in the meaning and purport of the agreement ' C.'

" Ninth. The evidence fails to satisfy me that either the defendant, or the defendant's engineer Lewis, understood that the agreement was for $2,260 for the two lower floors.

" Tenth. I therefore find that the failure to limit or confine the contract price of $2,260 to the two lower floors, was not an accident, was not procured by fraud, and was not a mutual mistake of the parties to the contract.

" Eleventh. Upon the foregoing findings of fact, I rule as a matter of law, that the plaintiff is not entitled to have said contract ' C ' reformed; and that the defendant is entitled to have the $965 deducted from the $2,260, leaving the sum of $1,295 as the amount the plaintiff is entitled to receive under agreement ' C.' "

The other findings are not material to the case as now presented.

The master also reported as follows : " Before making a rough draft of the report the plaintiff's and defendant's counsel filed with me requests for findings and rulings, which requests accompany this report. Having made a rough draft of the report, I notified the respective counsel thereof, and subsequently heard their suggestions and requests as to my final draft. I thereupon

made the foregoing final draft of the report, and gave notice thereof to the respective counsel on December 29, 1899. On the first day of January, 1900, the plaintiff's counsel filed with me his objections to my report, which objections accompany this report."

The plaintiff's objections to the master's report and his requests for findings and rulings were appended to the master's report as stated in the opinion of the court.

The master's report was filed January 5, 1900, and on January 10, 1900, the plaintiff filed the following statement: "Now comes the plaintiff and excepts to so much of the master's report as is inconsistent with the plaintiff's objections and his requests for findings and rulings, which objections and copies of the requests are appended to the master's report."

The case was heard in the Superior Court· by *Pierce,* J., who entered a decree as follows: "1. That the objections to the master's report be and hereby are overruled. 2. That the master's report be and hereby is accepted and confirmed. 3. That the exceptions to the master's report be and hereby are overruled. 4. That it appearing as a matter of record that this court upon the defendant's motion awarded the plaintiff his costs, and the same were taxed by the clerk pursuant to the order, to January 11, 1900, and it appearing that on that date the defendant tendered and brought into court for the plaintiff the amount found due the plaintiff by the master's report, together with interest thereon to January 11, 1900, and also that the defendant on that date tendered and brought into court for the plaintiff, the plaintiff's taxable costs as decreed by the court to January 11, 1900, and that the plaintiff received and accepted said sums so tendered and brought into court, now therefore it is ordered that the defendant be awarded the taxable costs from January 11, 1900."

From this decree the plaintiff appealed.

*B. W. Potter,* for the plaintiff.

*E. H. Vaughan,* for the defendant.

LORING, J. This case comes up on an appeal from a decree of the Superior Court, overruling the plaintiff's objections to the master's report, accepting and confirming the report, overruling the exceptions to the report, and allowing to the defendant taxable costs after the date when he paid to the plaintiff the sums found by the report to be due from him.

The decree should not have undertaken to deal with objections to the report. The only purpose served by them is to lay the foundation for exceptions to the report; unless perfected by exceptions founded on them, they give to the party making them no standing in court to contest the master's report.

The only exception or exceptions filed by the plaintiff were as follows: "Now comes the plaintiff and excepts to so much of the master's report as is inconsistent with the plaintiff's objections and his requests for findings and rulings, which objections and copies of the requests are appended to the master's report." Accompanying the report are, first, a paper containing four requests for findings of fact and four requests for rulings on the law and the evidence; second, a paper in the form of a letter to the master, asking him to draw certain inferences from the evidence; and, third, a paper containing seven objections, and in the seventh objection there are contained three requests for findings and two objections to the master's having failed to make two findings there specified. This is not a compliance with Chancery Rule 32 of the Superior Court, and there were no exceptions properly before that court.

But there is no error shown in the points urged by the plaintiff at the argument and on his brief, and he has lost no rights by failing to put them in the proper form.

1. The first point made by the plaintiff is that the master was wrong in making the finding of fact that the defendant never saw the specifications nor the unsigned bid of the plaintiff, Exhibit B, until the hearing before the master, and that the only paper or agreement he had any knowledge of was the contract, Exhibit C. There is nothing in the deposition of the defendant's engineer Lewis, which is the only evidence before the court which shows that this finding was not warranted. There is no inconsistency between this finding and the fact which appears from the contract between the defendant and Lewis, the engineer, that the defendant had approved specifications for heating the building. The finding is that the specifications submitted to the plaintiff that he might make a bid on the work had not been seen by the defendant. Whether they were an exact copy of the specifications, approved by the defendant, or not, does not appear, and is immaterial. What is material is that so far

as the defendant's knowledge went, the paper " C " contained the agreement. The argument that Lewis was acquainted with Exhibits A and B, and the defendant is bound by his knowledge, is disposed of by the master's ninth finding: " The evidence fails to satisfy me that either the defendant, or defendant's engineer Lewis, understood that the agreement was for $2,260 for the two lower floors," and the finding that the plaintiff had opportunity " to fully consider and understand the terms of said agreement 'C.' I do not find that said Lewis practised any deception or fraud in obtaining the plaintiff's signature to said agreement." We cannot say that these findings were not warranted by the evidence. This disposes of the plaintiff's second point also.

2. The third point is that the master was wrong in finding that the plaintiff did not prove that either the defendant or the defendant's engineer, Lewis, understood the agreement was for $2,260 for the two lower floors, and in the finding that the failure to limit the price of $2,260 to the two lower floors was not an accident, was not procured by fraud, and was not a mutual mistake of the parties to the contract. The plaintiff's bid was ambiguous; he had been requested to " Make price on piping without tanks and elevator pump and with " also to " Make price on complete plant " and " Make price on plant without heating system above the second floor." There is nothing on the face of the plaintiff's bid to show whether $2,260, which was the plaintiff's price " without the tanks and No. 8 Worthington pump," was his price for the whole building or for the building " without the three top floors." It was stated distinctly in the agreement " C " which the plaintiff had ample opportunity to study, that this was the price from which $965 was to be deducted if the system was not put in on the three top floors. We are of opinion that there is nothing in Lewis's deposition which prevented the master from making this finding.

3. The plaintiff's next point is that the master should have ruled, as a matter of law, that the agreement which was signed, Exhibit C, was ambiguous. On the contrary, we think that the agreement was not ambiguous, and that the plaintiff's bid, Exhibit B, which he wishes to have considered in determining the true construction of the unambiguous contract, Exhibit C, was ambiguous.

4. The plaintiff's next point is that, as a matter of law, the plaintiff is entitled to have the contract, Exhibit C, reformed. This is covered by what already has been said in dealing with the plaintiff's other points.

The decree, confirming the master's report, and allowing the defendant taxable costs from January 11, 1900, when the defend-. ant brought into court all sums due the plaintiff under the master's report, should be affirmed.

*So ordered.*