## PATRICK H. McNULTY vs. THE KEYSER OFFICE BUILDING CO.

*Building Contract—Architect Not Authorized to Bind Owner by Agreement to Pay Sub-Contractor for Extra Work.*

An architect employed by an owner of land to supervise the erection of a building thereon by a contractor, according to designated specifications, and without any power to change the agreement between the owner and the contractor, is not authorized to make an agreement with a sub-contractor to do certain extra work, so as to bind the owner to pay the sub-contractor therefor.

*Decided February 25th, 1910.*

Appeal from the Court of Common Pleas (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE. PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*R. B. Tippett,* for the appellant.

*Charles McH. Howard* and *Frederick C. Colston,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellant against the appellee to recover the sum of $1,200 for plastering certain beams in the office building of the defendant. The declaration contained only the common counts, to which the general issue was pleaded and the only exception taken in the case was to the granting of a prayer offered by the defendant at the close of the plaintiff's testimony, instructing the jury

"that no legally sufficient evidence had been offered to show that Wyatt and Nolting, the architects, were authorized to bind the defendant by any contract or agreement with the plaintiff whereby the defendant was to be, or become liable to the plaintiff for the alleged extra work on the Keyser Building for which this suit is brought, or that any such alleged contract or agreement, if made by said architects was subsequently ratified by the defendant, and that therefore their verdict must be for the defendant."

The defendant is a corporation owning a lot in the city of Baltimore, and on March 9th, 1905, entered into a written contract with the Broderick and Wind Engineering and Construction Company, a corporation, for the erection by said last named company of an office building upon said lot, at a cost of $288,000, subject to additions and deductions as provided in said contract.

This contract is known among owners and builders as "The Uniform Contract," and is the form adopted and recommended for general use by the American Institute of Architects, and the National Association of Builders, and it bears that information at the head of the contract.

Art. 1 of this contract provides that "the contractor shall and will provide *all the materials* and perform *all the work* for the erection and completion of said building, as shown on the drawings and described in the specifications prepared by Wyatt & Nolting, architects," and made part of said contract.

Art. 2 provides "that the work included in this contract is to be done under the directions of the said architects."

Art. 3 provides that "no alterations shall be made in the work except upon *written order of the architects;* the amount to be paid by the owner, or allowed by the contractor, by virtue of such alterations, to be stated in said order."

Art. 8 provides "that owner agrees to provide all labor and materials essential to the conduct of this work, not included in this contract, in such manner as not to delay its progress, and in the event of failure to do so, thereby causing

loss to the contractor, agrees that he will reimburse the contractor for such loss."

It is unnecessary for the purposes of this case to refer here to any of the other provisions of that contract.

The Broderick and Wind Company, the *general contractor,* on April 5, 1905, entered into a written contract, with the appellant, McNulty Brothers, of New York City, designated in said contract as *sub-contractor,* by which the appellant became bound "to provide all the materials and perform all the work mentioned in the specifications and drawings prepared by the said architects, and identified by the signatures of the parties hereto for the installation and construction of the plastering" in said building, and an exact duplicate of all the specifications relating to said plastering, as annexed to the contract between the Broderick and Wind Co. was also annexed to, and made a part of, said sub-contract. Paragraph 3 of this sub-contract provides that "it is further understood and agreed that the sub-contractor shall not, under any circumstances, be entitled to allowance for any extra work, unless the sub-contractor shall produce a written order to do such extra work, signed by a properly authorized officer or agent on behalf of the contractor."

Paragraph 15 provides that "no alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the contractor, and when so made, the value of the work added or omitted shall be computed and the amount so ascertained shall be added to, or deducted from the contract price."

This sub-contract contains many of the exact provisions of the general contract, differing only in so far as is necessary to conform to the difference of parties and the times of performance.

The only witnesses in the case were James R. Broderick, a representative of the Broderick-Wind Co. and Patrick McNulty.

During the progress of the work a question arose as to whether McNulty's contract required him to plaster certain

beams projecting below the ceiling line. It appears from Broderick's testimony that the drawings did not show the projection of these beams, but it also appears that he made no charge for them as extra work and material against the defendant, and received no allowance for them. The architects required these beams to be plastered as within the terms of the contract, and at their request Broderick obtained from McNulty Bros. an estimate of the cost of plastering the beams, viz, $1,200, being the actual cost of the work without profit. The Broderick and Wind Co. refused to allow Mc-Nulty Bros. anything extra for that work, because as Broderick testified: "It was not in our original contract; it was clearly an extra and it was up to McNulty to take it up with the architects to secure an allowance for that work;" and that he informed the architects of the refusal to allow Mc-Nulty anything on his contract. Both Broderick and Mc-Nulty testified that the latter refused to plaster these beams until he knew who was to pay for the work, and that the matter was in controversy for sometime until an interview was had between Broderick and himself and Mr. Nolting, one of the architects, "at which Mr. Nolting said the work would have to be done, no matter who did it; that the building could not be completed unless it was done; that McNulty should go ahead and finish it up, and that if it was extra, Mr. Nolting would see he was properly paid for the work." This was Broderick's language. McNulty's language was that "he told Mr. Nolting he did not propose to go on with it until he knew who was going to pay for it, and that Nolting said the work had to go on, and if, as I stated the plans did show the beams projecting below the ceiling, to go ahead with the work and he would see we were paid for it."

Broderick further testified that at the conclusion of this interview he asked Mr. Nolting to verify what had been agreed to in writing so that he would have an order for it as a matter of record, and he agreed to this, but one excuse after another was made for not doing so and it went along that way until Mr. Nolting went away on his vacation, and while he

was away the work was finished and the order was never written.

An itemized bill rendered by the Broderick and Wind Co. to the defendant was put in evidence in which this item of $1,200 for plastering these beams was contained, but the bill shows this item was stricken out and Broderick admits this was done by the architects, and that the bill, after this item was eliminated, was marked "approved" on June 29, 1906, by the Broderick-Wind Co. and by the architects.

An itemized bill rendered by McNulty Bros. to the Broderick and Wind Co. was also put in evidence containing this item of $1,200, and McNulty testified that he had no account against the defendant and that this item was charged on his books to the Broderick and Wind Co. and not to the defendant.

It was also shown that McNulty in July, 1908, issued an attachment against Broderick and Wind Co. for a balance claimed to be due, including this $1,200, but that it was afterwards withdrawn, and a settlement was made between them, excluding this item, which was expressly reserved by the plaintiff as against this defendant.

The question of law presented by the prayer granted in this case, is whether under this contract, and upon the facts in this case, the architects had the power to bind the defendant by the alleged agreement with the sub-contractor to pay for this alleged extra work.

This question ought not to be, and we do not think is, difficult of solution.

The principle upon which it must be decided is clearly stated in 6 *Cyc.* 29, where it is said: "The mere fact that a person is employed as architect, does not constitute such person a *general agent* of his employer, *his powers as agent being limited by the contract entered into between them.* Thus unless specially authorized, he is not entitled to change, alter or modify the contract entered into by the builder and his employer, nor has he any authority to bind the owner by

contracts for any work done or materials furnished for the
structures concerning which he is employed."

And in 2 *Amer. & Eng. Enc.,* page 821, 2nd Edition, it is
said: "He cannot employ another to do work which the con-
tractor has undertaken, or substitute a sub-contractor for the
principal contractor, either in the performance of the work,
*or the payment therefor."* In accord with this statement of
the law is the case of *Baltimore Cemetery Co.* v. *Coburn,* 7
Md. 202. Coburn had agreed to erect a gateway for the
Cemetery Co. at the entrance of the cemetery, and the writ-
ten contract between them provided that "should any altera-
tion be contemplated from the design it may be done, pro-
vided the parties beforehand agree upon the price and en-
dorse it upon the contract, and unless such agreement be also
entered, it is to be taken to be an agreement to make the
alteration without any change in price of the original con-
tract." The architect directed two windows to be placed in
the gateway which he deemed necessary to its symmetry and
beauty in consequence of the two chimneys being placed in a
position different from that contemplated by the original
plan, and Coburn sued to recover for this extra work. In
refusing to allow Coburn to recover, JUDGE TUCK, speaking
for the Court, said: "It is impossible to conceive the use for
inserting any such provision, if it is to have no effect in a
case like the present. Owners are very much in the power
of builders and architects. Changes, apparently unimport-
ant, are often made, the first knowledge of which comes to the
owner in the shape of an additional charge for extra work.
It may have been to prevent this, and the controversy that
often arises from verbal arrangements suppletory to written
agreements, that the parties had this cautious provision in-
serted. It was a clause for the benefit of both, especially for
that of the owner. If the plaintiff, relying on the assurance
of the architect, chose to perform this work without placing
it within the protection afforded to the parties by the con-
tract, he must bear the consequences * * * The witness was
appointed merely to superintend the work *according to the*

*plan, with such alterations as the parties might have agreed upon.* As such superintendent he had no power to bind the company by promises in their name, whatever he may have thought of the extent of his authority. Indeed the inference from his testimony is that the plaintiff looked to him, and not to the company, for he nowhere says that he promised the defendants would pay for the work, but that he would see the plaintiff paid what the windows were worth." These observations are so sensible and convincing, and the case so analogous to the one before us, that if it stood alone it might well be confidently relied on as decisive of the principle to be invoked. If here the Broderick and Wind Co. were suing the defendant for this work, they having paid the sub-contractor for it, or if the plaintiffs were suing the Broderick and Wind Co. for this work, the contract between them being in this respect identical with that between the Broderick and Wind Co. and the defendant, it is obvious that there could be no recovery, without evidence of the written order or agreement for the alteration or clear proof of a waiver of that requirement by the party itself, sued in either of the above supposed cases.

But there is not a particle of evidence in this case that the architects had any other agency or authority from the owner than to see that his contract with the builder was performed literally as made, or that the defendant did or said anything that could operate as a waiver of the protection afforded by the requirement of a written order from the architects, approving the work, and specifying the cost. There is a total absence of any privity between the plaintiff and defendant. Moreover, even if there were any evidence of waiver, and their liability would only be to the Broderick and Wind Co., who in that event, and upon payment to them, would become liable to the present plaintiff.

Coburn's case was cited and approved in the oft cited case of *Abbott* v. *Gatch,* 13 Md. 330, in which the Court said: "To hold a party liable in the face of such a stipulation. would be to turn his plain words into something that he had

not assented to." And in *O'Brien* v. *Fowler,* 67 Md. 565 Judge Alvey said: "The very object in the stipulation in the contracts was to exclude such extra work *except* upon the condition prescribed," citing *Coburn's Case,* and *Abbott* v. *Gatch, supra.*

In *Mallard* v. *Moody,* 105 Ga. 400, a case very similar to the present, it was said that authority to decide disputes respecting construction does not authorize the architect to dispense with any substantial provision of the contract.

There is collected in the excellent brief of the defendant a number of analogous cases which thoroughly sustain the case of *Baltimore Cemetery Co.* v. *Coburn, supra.* Among these may be specially mentioned *Campbell* v. *Day,* 90 Ill. 363, in which the law was laid down accurately and clearly in the instruction given by the Court and sustained on appeal, and it should be noted that the Court instructed the jury that even if they should believe from the evidence that it was necessary to remove certain brick piers and replace them with stone, that fact could not authorize the architect to bind the owners by employing a sub-contractor to do the work, and to the same effect are *Stuart* v. *Cambridge,* 125 Mass. 102; *McIntosh* v. *Hastings,* 156 Mass. 344; *Vanderwercker* v. *Vermont Central R. R.,* 27 Vt. 125, and *Dodge* v. *McDonnell,* 14 Wisconsin, 553.

The appellant however claims that the effect of Art. 7 of the contract with the Broderick and Wind Co. was to confer implied authority upon the architect to bind the defendant by his direction to McNulty Bros. to do this work.

Art. 7 provides that, "Should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architects, or of any other contractor *employed by the owner* on the work * * * then the time fixed herein for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid. But it is obvious that such effect cannot be given to that clause. It has no reference to extra work whatever. It was not, and could not have been,

invoked by the Broderick Co., first because there is no evidence it was delayed, and also because if it had been so delayed, no claim in writing for an extension of time was made as provided in Art. 7.

In support of this contention the appellant cites *Teackle* v. *Moore,* 131 Mich. 427, where the contract provided for written orders for extra work to be signed by the architects, who verbally directed a sub-contractor to put up a scaffold not embraced in the contract, but necessary after the fall of a roof in order to prevent delay to the contractor in the completion of the contract, and the Court held that under the circumstances, the architects bound the owner to pay therefor. But an examination of that case shows that it differs from the case before us in two important particulars. In *Teackle* v. *Moore,* there was no clause in the contract similar to paragraph 15 in the present contract. The language of *Teackle* v. *Moore* upon this point is this: "Should any alteration be required in the work shown or described in the drawings and specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished as the case may be," *but no written order of the architects is required.* Again, in that case, the architects are described in the contracts, generally and broadly, as *"acting as agents of said owner,"* and the Court adverts to that fact, saying: "The architects were *acting for the owner* in all the contracts."

So in *Seymour* v. *Long Dock Co.,* 20 N. J. Equity 396, the language of the contract was. "work to be done under the direction and constant supervision of the engineer of the company by whose measurements and calculations the *quantity and amount of the several kinds of work performed under the contract* shall be determined," and the Master, sitting for the Chancellor, said that in view of this broad language, and of a further provision in the contract that the contractor "was entitled to rely on 'the instructions and corrections of the engineer within the scope of his authority,' the loss occa-

sioned by extra work verbally ordered by the engineer, ought not to fall upon the contractor, but upon the company."

In *Commissioners* v. *Hill,* 122 Ind. 215, not only the engineer, but the chairman of the Board of Commissioners also approved the extra work and promised to pay for it.

The case of *Erskine* v. *Johnson,* 36 N. W. 511, comes closer to sustaining the appellant's contention in this case than any other cited, but when closely scrutinized it seems to be placed upon the ground of *waiver by the defendant,* since the Court says, speaking of the requirement of a written order for extras: "This provision may be waived *by the parties."* If however it was designed by the Court to mean that an architect in such a case as this can waive such provision, we are not prepared to yield our assent to that doctrine.

We can discover nothing whatever in the evidence to sustain the doctrine of holding out invoked by the appellant. His own contract with the Broderick and Wind Co. informed him that they were general contractors for the erection of the building, and that Wyatt & Nolting, were the architects who were to supervise the performance of both contracts. He was thus put upon guard to ascertain the extent of the architects' authority under the principal contract, which it cannot be doubted would have been exhibited to him on his request, by the Broderick and Wind Co. and if he chose to act without using the means at hand to inform himself he must bear the consequences.    But further, the evidence shows that Broderick told him he could not allow him for this work because under their contract with defendant they could get no allowance without a written order from the architects, and the appellant thus had both constructive and actual notice of the limits of the authority of the architects.    The appellant testified frankly and without any attempt to bolster up his case on this theory.    Indeed, neither he nor Broderick testified to any word or act on the part of the defendant which could operate as, or suggest, an estoppel by holding out the architects as having any other or further authority than the limited authority conferred in the principal contract, and we do

not deem it necessary to pursue this question further. It necessarily follows from what we have said that the prayer of the defendant was properly granted.

> *Judgment affirmed, with costs to the appellee above and below.*