OVERTON, J.
 

 Plaintiff sues defendant to recover $4,813, with legal interest thereon from judicial demand until paid. The litigation grows out of a contract to remodel a building, belonging to defendant, and located at the corner of Baronne and Perdido streets, in the city of New Orleans. The amount claimed is for constructing corridor partitions, including the doors and windows therein, on the third and fifth floors of the building. According to plaintiff’s theory, the construction of these partitions constitutes extra work. According to defendant’s theory, the construction of them is called for by the contract, and, instead of constituting extra work, is included in the contract price.
 

 The case involves the construction of the contract, including the plans and specifications, which are made part thereof, in order to determine whether the work upon which this suit is based is extra work or not.
 

 The contract includes the general conditions, set forth in the instrument, the speifications, and the agreement to do the work called for by them. The documents, constituting the contract, by the terms of the instrument, are complementary, and what is called for by any one is as binding as if called for by all. The instrument declares that the intention of the documents is to include all labor and materials necessary for the proper execution of the work, but that it is not intended that materials or work not covered by, or properly inferable from, any heading, branch, class, or trade of the specifications shall be supplied, unless distinctly so noted on the drawings, and that materials or work described in words, which so applied have a well-known technical or trade meaning, shall be held to refer to such recognized standards. Under the heading, “Scope of Work,” to be found in the general conditions of the contract, the instrument reads:
 

 “The work intended to be executed under this contract shall consist of exterior and interior alterations and repairs and shall include all of the work shown, specified or reasonably implied by the accompanying drawings, sheets Nos. 1 to 5 inclusive and these specifications.
 

 # sje * # * *
 

 “4. Placing toilets, service rooms, corridor partitions, rubber floors in corridors and toilets, plastering walls and ceilings on 3rd, 4th, and 5th floors.”
 

 There was originally in the drawings a detailed plan showing the interior construction work for the fifth floor, but this plan was later made to apply to the fourth floor, leaving what is known as the “Typical Floor Plan” to apply to the third and fifth floors. No dispute is raised concerning the work done on the fourth floor, where it seems the partitions were constructed as a part of the contract in accordance with the fourth floor plan, which was originally the fifth floor plan, but, as said, the dispute is limited to the furnishing of material and the construction of the partitions on the third and fifth floors.
 

 The specifications contain nothing more concerning corridor partitions on the third and fifth floors than what is mentioned in the
 
 *839
 
 title, “Scope of Work,” quoted above. On the typical floor plan there are two broken lines, close together, bearing the legend, “Line of Corridor Partitions,” in the form of a rectangle on the sheet. On the top lines are written the words, “Corridor, Rubber Floor & Base,” and on the bottom lines are written the same words, and, in addition thereto, the words, “Blaster Walls and Ceiling.”
 

 Defendant, in preparing its bid, interpreted the broken lines as meaning something to be taken out or constructed at some future date, and as not indicating anything to be constructed under the contract to be let. There was nothing to be taken out. Being troubled as to how a rubber base was to be constructed, when no partitions were to be then built, plaintiff then called, through its vice president, Carl Peterson, at the office of defendant’s architect, Sam Stone, Jr., & Co., a body corporate, designated in the contract as the architect. 1-Ie there saw Frank Stone, an engineer, and secretary and treasurer of the company. Peterson testified that Frank Stone told him: “I suppose they are going to put those partitions in at a future date, but at the present time they do not know how they are going to put the doors in, and that is the reason they got the lineal price.”
 

 A number of experts, consisting largely of contractors and one or two architects, took the witness stand. The overwhelming weight of the evidence is to the effect .that a dotted or broken line, unexplained, on plans, means something to be removed or work to be done at a future date, and that, in this instance, the dotted or broken line conveys that meaning. The weight of the expert evidence given is also to the effect that the dotted or broken lines, considered in connection with the specifications, do not indicate that-corridor partitions are to be constructed on the third and fifth floors, as part of the contract.
 

 Some of the witnesses were unsuccessful bidders for the remodeling of the building, and to guard against error they either telephoned or went to the architect’s office. In each instance, with the exception of one, they testify that they were informed that the corridor partitions were not to be constructed.
 

 Frank Stone, whom some of the witnesses saw, testifies that he does not recall having made the statements that they, including Peterson, plaintiff’s vice president, say he made. This negative evidence cannot be permitted to outweigh the positive evidence to the effect that he did, for, had he been able to recall whether the statements, attributed to him,' were made by him, his answer might have been that they were.
 

 While the specifications in the title, “Scope of Wox*k,” mention corridor partitions for the third and fifth floors, yet, when reference is made to other parts of the specifications, nothing more is found concerning these partitions. If reference is made to the plans, nothing is found shówúng that they should be constructed, and the number of windows and doors the partitions are to contain, nor their kind and location, unless the typical floor plan, intended for the third and fifth floors, be discarded, and reference be made, which is scarcely permissible, to another sheet, intended to apply to the fourth floor, and to a detail sheet, which, so far as it relates to corridor partitions, is evidently merely supplementary to the plan intended for the fourth floor, and they be adopted as the plans for corridor partitions for the floors in dispute. If reference be añade to the typical floor plan, which was intended to apply to the two floors in dispute, we find there the dotted or broken lines,
 
 *841
 
 marked “Corridor Partitions,” which convey the instruction that something here is to be removed or that the partitions are to be constructed at a future date, and hence are not included in the contract. As well might the draftsman have written where the broken lines are: “Corridor partitions omitted,” as to have used those lines. The meaning conveyed is the same.
 

 Plaintiff could have done nothing more, under the circumstances, than make inquiry of the architect, designated in the contract, and this it did, with the result that it was informed that the partitions were to be erected at a future date, and hence were not to be included in the bids.
 

 Our conclusion is that plaintiff is entitled to recover. It did the work, in accordance with the plans adopted for the fourth floor, under the directions of the architect, subject to the right to litigate the question here involved, as to his right to recover for the work. There is no dispute as to the cost of the work.
 

 The case of Delaney v. Chisolm & Co., 166 La. 406, 117 So. 443, is not applicable here, save on the undisputed point that, when work is called for by either the plans or the specifi- ' cations, though not mentioned in one, the contract so providing, it should be done. In that case, unlike the present, the work in contest, though not mentioned in the specifications, was clearly called for by the plans. The case of Smith v. Board of Education of Parkersburg, 76 W. Va. 239, 85 S. E. 513, is. also of no avail to plaintiff here, for virtually the same reason that the Delaney Case is inapplicable.
 

 There was judgment in the lower court in favor of plaintiff for the full amount of his claim.
 

 The judgment appealed from is affirmed.