## MILEY v. MARX.

No. 1140.

Court of Appeal of Louisiana. First Circuit.

April 17, 1933.

J. C. Hollingsworth, of New Orleans, and L. W. McDougall, of Covington, for appellant.

Carter & Carter, of Franklinton, for appellee.

MOUTON, Judge.

Plaintiff is claiming damages for injuries received while driving a gravel truck on the Bogalousa-Franklinton Highway on October 10, 1930.

He recovered judgment against defendant for $672 for damages, including medical expenses and loss of wages.

It is not contended that plaintiff did not suffer the injury on the day alleged, the defense being, as remarked by the district judge in his written opinion, "that defendant's truck was not on said highway at any time during the day when plaintiff received the injury."

Hence, the real question presented for solution is as to whether defendant's truck was on that highway on the day alleged and did inflict the injury of which plaintiff complains.

The evidence shows that defendant had a contract with the school board of Washington parish to furnish lumber and building materials for the construction of a school house at Jimerson creek, and that Mr. Neilson had been designated to supervise the erection of that building.

Mr. Neilson says that he received all the lumber for its construction as supervisor of the work and representative of the school board. His testimony is that a load of lumber for that building was delivered by defendant on October 10, 1930, and that this was on a Friday. He says he was not at the school building when this delivery of lumber was made. On the Wednesday preceding that Friday, he says that they had stopped work on the building for lack of material and that on the next day, Thursday, he met Mr. George Marx, traveling salesman for defendant, at the Community Fair, Thomas School; that they called the office at Bogalusa and Mr. Marx then told him to be ready to go to work, that the "lumber would be there to-morrow, which would be Friday." Mr. Neilson's testimony is that he went to the school building on Saturday morning and that "the lumber was there"; he says further, George Marx came there Saturday morning and "checked the lumber that was brought the day before." He testifies that on Friday he was at his home and fixed the date of the delivery of the lumber, as above explained.

The district judge, in commenting on the evidence, said he knew Mr. Neilson "to be an

honorable gentleman," and that he believed his testimony to be true.

Mr. Charlie Carroll, witness for plaintiff, testifies that he brought plaintiff to Franklinton the day he was hurt. Although he could not fix the date he took plaintiff to Franklinton, there can be no doubt it was on the day of the accident, October 10, 1930, which is clearly established by the record. He says, on that day, he rode in a truck with two negroes who said it belonged to Mr. Marx, and though not positive, he thinks, that Mr. Marx's name was on the truck. While giving his testimony, he identified Ira Powell, colored, as the one who was driving that truck. He says it was raining, that the truck was covered with a tarpaulin, that the negroes told him they were carrying lumber, and from what they said, he made out they were going to Jimerson creek, but that he did not look to see if it was lumber they were carrying. Mr. Carroll says he got off at Sheridan and that the truck continued on its way towards Franklinton on the Franklinton Bogalousa Highway.

Mr. Claude Noble, plaintiff's witness, remembers the day plaintiff was injured. This witness was then hauling gravel on the Bogalousa-Franklinton road and was traveling towards Franklinton; says a truck passed ahead of him, going fast, headed in the same direction. He describes that truck as having a long body, with a load of lumber, and with the letters M. Marx on the truck. On his way between Sheridan and Franklinton, Mr. Noble says he came up to where plaintiff's truck was lying in the ditch and which was headed in the direction of Franklinton. Plaintiff's truck, this witness says, was lying on the left side of the highway, the front part pointing towards Franklinton.

Mr. McNees, another witness for plaintiff, while trying to fix his gravel truck that had broken down, saw the Marx truck pass by going towards Franklinton and traveling "pretty fast," he says.

Mr. Reuben Carroll was with him, stopped to catch that truck, but upon seeing that it was not a gravel truck he did not flag it, knowing that gravel trucks helped each other but it seems did not think the same way about other trucks. He says this truck had letters all over the body, was driven by a negro, that some part of the lumber it was carrying stuck out at the end of the truck; says it was covered with a tarpaulin and in which his testimony agrees with that of Mr. Charlie Carroll, above referred to, where he says, the truck was covered with a tarpaulin.

Mr. Reuben Carroll, also engaged in hauling gravel on that highway, saw a truck pass by going towards Franklinton with the name of M. Marx in box car letters on both sides of the truck, loaded with lumber, with two negroes in the truck. He says plaintiff's truck was on the left side of the roadway, with both wheels on that side in the ditch, the left wheel and fender jammed in the bluff or embankment, which the record shows rose about three feet above the level of the highway. This witness says, as was testified to by Mr. McNees, that he had intended to flag the Marx truck but changed his motion when he discovered it was not a gravel truck.

Plaintiff, Prentiss Miley, testifies, he was driving an empty gravel truck towards Franklinton when he was struck by defendant's truck and thrown on his left side into the ditch. He says he was then a little to the right of the center line of the road when that truck passed to his right and knocked him on the left side where his truck was ditched, causing the personal injuries for which he is suing in damages.

On being cross-questioned by counsel for defendant, plaintiff repeated over and over again that in attempting to pass ahead of him on his right side the Marx truck knocked his truck to the left side of the roadway.

Several witnesses testified that plaintiff's truck was found soon after the accident on the left side of that roadway going towards Franklinton, the direction in which the evidence shows plaintiff was traveling.

Mr. Sam Wiley, plaintiff's father, saw the truck after the accident, examined it, and says the right back casing of plaintiff's truck had been hit on that side where there was also a hole in the rubber and that the truck was lying against the embankment on the left side of the road. It was shown that a large number of gravel trucks were running over that highway which accounted for the fact that the road was hard and had very little loose gravel.

Plaintiff, it is shown, had been driving trucks for several years and that he was therefore an experienced driver. As he was driving an empty truck on a rather smooth surfaced road, it is not reasonable to infer that he would have allowed his truck to go across that highway to the left side and into the ditch, turning over. It is much more reasonable to account for the accident by saying that he was knocked across by the effect of a collision on his right side.

Counsel for defendant refer to a written statement made by plaintiff in reference to the occurrence in question. In that statement he said a large truck passed him on his right. Some parts of that truck struck his truck which ran on the left of the road, striking an embankment on the left side, part of which statement is underscored by counsel in their brief. His testimony taken on the trial does not vary in any substantial particular from that portion of the statement.

In another part of that statement underscored by counsel for defendant, plaintiff says: "I don't know what this truck was

loaded with, nor do I know what color it was, and the best I can remember the body and the load in the truck were covered with a white or yellow canvas cover."

In his evidence on the trial, plaintiff said he could not say it was loaded with lumber in which there is no contradiction, on this important fact, from his declaration in the statement, that he did not know "what this truck was loaded with"; and there is no conflict in his testimony with the other part of that statement, although there may be a slight difference or variation in the language used by plaintiff on the witness stand.

In the underscoring, to which we have referred, counsel directs our attention to the following quotation from that statement where plaintiff speaks of the truck and where he says: "I did not know it was behind me, in fact, I did not see it until just about the time it struck me, it was traveling faster than I was, but I can't say how fast."

In his testimony, plaintiff said on this phase of the case: "When I heard the noise behind me I looked back and saw the truck was going to pass me." Further on in his testimony, on being cross-questioned on this point, he answers: "I said I turned to look at it when it got up here close to me."

In his statement, above referred to, he said, "I did not know the truck was behind me," and in his testimony states, "When I heard the noise behind me I looked back." In this statement that he heard the noise behind him, plaintiff did not say that he knew a truck was coming behind. It was when he looked around to see what was coming that he saw the truck which was then on the side of his truck and at about that time his truck was struck on its right side by the other truck, and was knocked across the roadway into the ditch. Stripped of the difference in the language used by plaintiff in his written statement and in his testimony during the trial, he has, in reference to all material facts, given the same account of what occurred.

Counsel for defendant refer to the fact that the Messrs. Noble, McNees, and the two Carrolls who testified in the case, are first and second cousins of the plaintiff and, we presume, for that reason, it should not be believed that they testified to the truth. Evidently, if they testified falsely, it must be assumed that they framed up a story that plaintiff might recover damages against defendant. If such had been their purpose, it occurs to us, a shorter and easier way to attain that object would simply have been for two or three of them to have testified that they had witnessed the collision that had caused the damage, about which there would have been a very slight and remote chance of contradiction, if any would have been possible.

We have carefully read the evidence of those witnesses, including that of plaintiff, and find nothing suggestive of any attempt on their part to depart from the truth, and do not think that their credibility is to suffer because they are the collateral relatives of the plaintiff.

Mr. Neilson who testified, as hereinabove shown, that a load of lumber was delivered at the Jimerson school house on October 10, 1930, the day of the accident, does not appear to be a connection or relative of the plaintiff, nor as having any interest whatsoever in the outcome of this suit.

The testimony of the above named witnesses inevitably led to the conclusion that the lumber was carried to that school house in a truck belonging to defendant and was driven on the day of the collision by a negro boy, identified by Charlie Carroll as being Ira Powell, with whom he rode on the truck and who, the evidence shows, was in the employ at that time as truck driver for defendant.

No other conclusion can be logically reached, unless the evidence of plaintiff, above considered, by reason of the evidence introduced by defendant, fails to establish his claim with legal certainty.

Mr. Neilson said, as before stated, that on Thursday, October 10, 1930, Mr. George Marx told him to go to work as the lumber would be sent to the school house, Friday, the next day.

Mr. George Marx, who was salesman for defendant at that time, when testifying in the case, was questioned about that incident. His answer is that if it occurred, he did not remember.

Mr. Neilson testified that on Saturday, October 11, 1930, the day after the lumber was delivered at the school house, Mr. George Marx checked the bill for the lumber which had been sent on Friday.

Questioned in reference thereto, Mr. Marx said he went to the school house two or three times, but does not remember any conversation or using the telephone.

"Negative testimony of witness that he did not recall having made statements will not outweigh positive evidence to effect that he did." Ullrich Glass Co. v. Interstate Electric Co., 171 La. 836, 132 So. 363.

Mr. George Marx recalls that he met Mr. Neilson, Thursday, October 9th, and Saturday, October 11th, but does not remember that he was to send the lumber to the school house, and that he checked the bill for it on Saturday, the 11th. The only doubt about the testimony of Mr. Neilson was as to whether he could fix correctly the date of these meetings. It is certain, from the testimony of Mr. George Marx, that they met at the time and place mentioned by Mr. Neilson, and it is not denied by Mr. Marx as to what was said by Mr. Neilson in reference to the delivery of the lumber and the checking of the bill the next day. The fact is that what Mr. Neilson

said is not denied or negatived by Mr. George Marx and leaves unquestioned the testimony of Mr. Neilson on that subject, which constitutes an important factor in the chain of evidence, proving that the lumber was sent there by defendant in one of his trucks driven by Ira Powell, one of his truck drivers.

In connection with the statement by Mr. Neilson that the bill for the lumber was gone over by Mr. George Marx on Saturday the 11th of October, 1930, it might not be amiss to state that a check was given by the school board on Saturday, the 11th, 1930, in favor of defendant, for the payment of materials furnished. It is true that the check was given the day after the delivery of the lumber, and seemingly, perhaps, with unusual haste. We are all aware of the financial condition of the country in October, 1930, and that no delay was ordinarily allowed at that time, between the delivery of goods and their payment, if collection could be made. There is nothing to indicate that the lot of lumber, referred to, was not covered by the check given defendant by the school board. No doubt it was, else defendant would have shown that it was not, upon which a contention could have been urged that its delivery was subsequent to the 10th of October, 1930.

The defendant introduced evidence gathered from his books and records to show that no lumber was delivered at the Jimerson creek school house on October 10, 1930.

This defense was based principally on the claim made by defendant that there were no dray receipts of that date showing such a delivery.

Miss Daspit, now Mrs. Carr, was the bookkeeper of the defendant at that time. Her testimony is that she attended to the books and handled the dray tickets when they were returned to the office. She testifies that she could find no dray receipts for delivery of lumber at the Jimerson school on October 10, 1930. Asked if she knew where deliveries were made, she answers, "I take the word of the drivers, I don't follow them out," but says, however, she knows where they went on that day; how she knew that, she does not explain. It cannot be said that it was impossible for an error to occur as to where lumber or other material was actually delivered under those conditions.

The four drivers of defendant, including Ira Powell, testified that they had not delivered the lot of lumber in question at that school house October 10, 1930.

All of that testimony, and that of Mrs. Carr, bookkeeper, was negative in character, as was remarked by the district judge in his opinion in which he said, however, that the preponderance of the evidence was with the plaintiff. His opinion is clear and convincing and in which the issues are so well disposed of that it could have been adopted by this court.

Counsel for defendant have made such an earnest and zealous appeal to this court that we felt compelled to review at length all the facts as reflected in this voluminous record, and, after careful consideration, find that the issues have been correctly solved by the trial judge.

Plaintiff has proved his case with legal certainty and is entitled to the judgment rendered below. The lower court has certainly not fallen into any manifest error on its finding of fact to warrant a reversal by this court.

■ This case was postponed during the trial below to take the testimony of a witness. When it was resumed for the examination of that witness, counsel for defendant objected to the introduction of the testimony because defendant had filed respite proceedings which were, as stated by counsel, "on the docket of that Court." Counsel said they desired to bring this fact to the attention of the district court that the personal rights of defendant would not in any way be affected. The objection was overruled, the court stating that as the case had been tried, with the exception of the testimony of one witness, the taking of that testimony would not affect the respite proceedings, and, in the judgment rendered against defendant, the court said, it would be subject to the respite and that plaintiff would be placed in the same position for the amount of the judgment as any other creditor of defendant.

We do not see, under this disposition of the case, how defendant will be affected in his personal rights, the reason given by counsel in bringing the subject to the attention of the court; and, we do not find that defendant has any ground of complaint on this issue, nor on his other contentions.

Judgment affirmed.